FILED
COURT OF APPEALS
DIVISION II

2014 JUN 17 AM 8: 33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>v.<br><br>ARVELL LAMONT KINDELL,<br><br>　　　　　　　Appellant. | No. 44086-5-II<br><br><br><br>PART PUBLISHED OPINION |

MAXA, J. — Arvell Kindell appeals his convictions and sentence for first degree burglary and second degree unlawful possession of a firearm. One of the elements of first degree burglary is that the defendant entered or remained unlawfully in a building with the intent to commit a crime against a person or property therein. RCW 9A.52.020(1). As a matter of law, illegally possessing a firearm does not constitute a crime against property. Accordingly, we hold that (1) the trial court erred in instructing the jury in response to a jury question that whether illegally possessing a firearm constitutes a crime against property is a factual determination for the jury to decide, and (2) the error was not harmless because it allowed the jury to convict Kindell of burglary based on an insufficient predicate crime. We address the remainder of Kindell's arguments in the unpublished portion of this opinion.

We reverse and remand for a new trial on the first degree burglary conviction. We affirm the second degree unlawful possession of a firearm conviction but remand for resentencing on that conviction.

FACTS

On June 20, 2012, Kindell was at his former girl friend's house in violation of a no contact order when a law enforcement officer arrived. Kindell fled on foot and on a bicycle. Looking for a place to hide, Kindell headed to Patricia Crowley's house. Kindell considered Crowley a friend, but Crowley considered Kindell to be merely an acquaintance.

Kindell knocked on Crowley's front door. Crowley's ten-year-old granddaughter, ZM, responded to the knock. When ZM opened the door halfway, Kindell came into the house. Once inside, Kindell did not threaten Crowley or ZM or make any demands, other than asking them to hide him. Crowley and ZM went out the back door, where they met officers who were approaching the house. Kindell saw the officers in the back yard and retreated into the house. Crowley informed the officers that there were two firearms in her bedroom – a pistol hidden in a basket and a shotgun in a gun sock leaning against the wall. The firearms were unloaded and the ammunition was stored in her head board.

The officers requested that Kindell come out of the house and surrender, but initially he refused. After several hours, Kindell exited the house and was arrested. Officers found Crowley's unloaded shotgun lying on the couch in the living room.. And shotgun ammunition was found in a box in the hallway and on the bed.

Kindell was charged with first degree burglary with a firearm enhancement and second degree unlawful possession of a firearm. At trial, the trial court instructed the jury on the elements of first degree burglary. Neither party took exception to the "to convict" instruction,

which stated that the State was required to prove that Kindell entered or remained unlawfully in Crowley's house and that the entering or remaining was with intent to commit a crime against a person or property therein.[1]

During deliberations, the jury asked the following question: "Jury Inst[ruction] #15 [to convict/burglary instruction] . . . Does illegally possessing a firearm constitute a crime against property?" Clerk's Papers (CP) at 92. Kindell argued that whether illegally possessing a firearm constitutes a crime against property was a legal question, but the trial court disagreed and stated that it was a factual question. After conferring with counsel, the trial court provided the following answer to the jury: "That is a factual determination you need to collectively decide[.]" CP at 92.

The jury found Kindell guilty of first degree burglary and second degree unlawful possession of a firearm, and answered "yes" on the special verdict form alleging that Kindell was armed with a firearm during the commission of the burglary. . Kindell moved to arrest the judgment or in the alternative to grant a new trial, arguing that whether the unlawful possession of a firearm was a crime against a person or property was a question of law and not an issue for the jury to determine. The trial court denied Kindell's post-trial motions. Kindell appeals.

## ANALYSIS

One of the elements of first degree burglary is that the defendant entered or remained unlawfully in a building "with intent to commit a crime against a person or property therein."

---

[1] Because Kindell was charged with first degree burglary, the instruction also included an additional element – that Kindell was armed with a deadly weapon or assaulted another person during the commission or immediate flight from the burglary. *Compare* RCW 9A.52.020 (first degree burglary) *with* RCW 9A.52.025, .030 (residential burglary; second degree burglary). That element is not at issue here.

RCW 9A.52.020(1). In response to a jury question, the trial court instructed the jury that whether unlawfully possessing a firearm constitutes a crime against property is a factual determination for the jury to decide. By giving this response, the trial court implicitly determined that under certain facts unlawful possession of a firearm can constitute a crime against property, and therefore can qualify as a predicate crime for first degree burglary.

We hold that the trial court erred in responding to the jury question because whether unlawful possession of a firearm constitutes a crime against property is a question of law, and that as a matter of law, unlawful possession of a firearm is not a crime against property. We further hold that this error was not harmless because it allowed the jury to convict Kindell of first degree burglary based on a predicate crime that as a matter of law cannot satisfy the crime against property requirement in RCW 9A.52.020(1).

A. PRESERVATION OF CHALLENGE

Initially, the State argues that Kindell failed to properly preserve his challenge to the trial court's response to the jury question by not objecting to it below. We agree, but we exercise our discretion to consider this argument on appeal.

RAP 2.5(a) states that an appellate court "may" refuse to review a claim of error not raised in the trial court. This rule allows, but does not require, us to refuse to review certain claims that an appellant failed to raise below. *State v. Osborne*, 140 Wn. App. 38, 41, 163 P.3d 799 (2007). We retain discretion under RAP 2.5(a) to consider an issue raised for the first time on appeal. *Osborne*, 140 Wn. App. at 41.

4

Here, during discussion of possible answers to the jury question about the first degree burglary "to convict" instruction, Kindell stated that whether unlawful possession of a firearm is a crime against property was a legal question. The trial court expressed disagreement, stating that the issue was a factual determination. Kindell then agreed that the court should tell the jury they would need to decide the issue for themselves and did not object to the trial court's response to the jury question. In post-trial motions Kindell renewed his argument that whether unlawful possession of a firearm was a crime against property was a question of law and not an issue for the jury to determine.

Kindell did not properly object to the trial court's response to the jury question. However, he did raise the argument in the trial court that whether unlawful possession of a firearm is a crime against property was a legal question. It was only after the trial court rejected this argument that Kindell acquiesced to the trial court's response to the jury question. And Kindell argued again in post-trial motions that whether the unlawful possession of a firearm was a crime against a person or property was a question of law. Under these circumstances, we exercise our discretion under RAP 2.5(a) to consider Kindell's argument on appeal.

B.    STANDARD OF REVIEW

The decision to answer jury questions and give further instructions is within the trial court's discretion. *State v. Becklin*, 163 Wn.2d 519, 529, 182 P.3d 944 (2008). However, such instructions must accurately state the law. *State v. Teal*, 152 Wn.2d 333, 339, 96 P.3d 974 (2004). We review the legal accuracy of jury instructions de novo. *Becklin*, 163 Wn.2d at 525. Instructing the jury in a manner that relieves the State of its burden to prove every element of a

crime beyond a reasonable doubt is reversible error. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

Here, whether the trial court's answer to the jury question represented an accurate statement of the law involves an interpretation of RCW 9A.52.020(1) and RCW 9.41.040, which is the statute defining the crime of unlawful possession of a firearm. Construction of a statute is a question of law which we review de novo. *State v. Hirschfelder*, 170 Wn.2d 536, 541-42, 242 P.3d 876 (2010). Our objective in interpreting a statute is to discern and implement the legislature's intent. *Hirschfelder*, 170 Wn.2d at 543. " '[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Hirschfelder*, 170 Wn.2d at 543 (alteration in original) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). " 'Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' " *Hirschfelder*, 170 Wn.2d at 543 (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

C.      MEANING OF "CRIME AGAINST PROPERTY"

The trial court's response to the jury question was erroneous in two respects. First, whether a particular crime constitutes a crime against property is a question of law, not a question of fact for the jury to decide. Second, as a matter of law, unlawful possession of a firearm cannot constitute a crime against property under RCW 9A.52.020(1).

1.     Question of Law

Whether a particular crime constitutes a crime against property involves the interpretation of the burglary statute and the statute defining the proposed predicate crime. As noted above,

construction of a statute is a question of law. *Hirschfelder*, 170 Wn.2d at 541-42. As a result, we hold that the trial court must determine this issue as a matter of law and cannot defer this decision to the jury.

In *State v. Snedden*, 149 Wn.2d 914, 919-23, 73 P.3d 995 (2003), our Supreme Court determined as a matter of law that a particular crime constituted a crime against a person without specifically holding that the determination was a question of law. In *Snedden*, the trial court engaged in a legal analysis – focusing on the language of the indecent exposure statute – to conclude that the indecent exposure statute satisfies the crime against a person requirement in RCW 9A.52.020(1). 149 Wn.2d at 919. Similarly, in *State v. Stinton*, 121 Wn. App. 569, 574-77, 89 P.3d 717 (2004), we did not expressly hold that determining whether a protection order violation was a crime against a person was a question of law. But we did frame the issue as whether "as a matter of law" the violation of a protection order could serve as the predicate crime for a burglary. *Stinton*, 121 Wn. App. at 574. In both cases the courts decided whether the crime could be a predicate crime as a question of law – i.e., focusing on the elements of the crime rather than the factual circumstances of the case. *Snedden*, 149 Wn.2d at 919; *Stinton*, 121 Wn. App. at 574.

Here, the trial court implicitly ruled that whether unlawful possession of a firearm constituted a crime against property was a question of fact for the jury. We hold that the trial court erred in making this ruling, and in allowing the jury to make this determination rather than deciding the issue itself as a matter of law.

2. Nature of Unlawful Possession of a Firearm

The legislature did not define what constitutes a "crime against a person or property" under RCW 9A.52.020(1) and other burglary statutes. Courts have applied a common sense analysis focusing on the statutory elements of the particular crime supporting the burglary charge to determine whether that crime is a predicate crime under the burglary statutes. *Snedden*, 149 Wn.2d at 919 (the plain language of the indecent exposure statute satisfies the "crime against a person" requirement); *Stinton*, 121 Wn. App. at 574 (the statutory definition of a protection order violation shows that it is a "crime against a person").

Here, the jury question and the trial court's response focused on the crime against property component of RCW 9A.52.020(1) – whether unlawful possession of a firearm constituted a crime against property.[2] RCW 9.41.040 provides that unlawful possession of a firearm involves certain persons owning, having in their possession, or having in their control any firearm. In other words, a person commits the crime merely by owning, possessing or controlling a firearm. The plain language of RCW 9.41.040 makes it clear that unlawful possession of a firearm does not satisfy the crime against property requirement of first degree burglary. We cannot conceive of a situation where merely owning, possessing or controlling a firearm can cause harm to property. Accordingly, the trial court erred in allowing the jury to consider unlawful possession of a firearm as a predicate crime for first degree burglary.

---

[2] The State does not argue that unlawful possession of a firearm constitutes a crime against a person, and we do not address this issue.

We hold that the trial court erred in instructing the jury that whether unlawful possession of a firearm constituted a crime against property was a factual issue for the jury to decide.[3] As a matter of law, unlawful possession of a firearm is not a crime against property and cannot be the predicate crime for first degree burglary.

D.    HARMLESS ERROR

Both constitutional and non-constitutional errors may be subject to harmless error analysis. For a *constitutional* error, the State bears the burden of proving that the error is harmless beyond a reasonable doubt. *State v. Lynch*, 178 Wn.2d 487, 494, 309 P.3d 482 (2013). A *non-constitutional* error requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial. *State v. Gower*, 179 Wn.2d 851, 854-55, 321 P.3d 1178 (2014). An error is constitutional if it implicates a constitutional interest as compared to another form of trial error. *See State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Not every instructional error is constitutional. *O'Hara*, 167 Wn.2d at 101-04 (whether error in a self-defense jury instruction is constitutional requires a case by case analysis). But a jury instruction that misstates the law such that it relieves the State of its burden to prove every element of the crime charged affects a *constitutional* right and therefore is subject to the rigorous constitutional harmless error standard. *State v. Thomas*, 150 Wn.2d 821, 844-45, 83 P.3d 970 (2004).

Here, the trial court's "to convict" instruction accurately informed the jury of the elements of burglary and the State's burden to prove each one beyond a reasonable doubt.

---

[3] Kindell also argues that unlawful possession of firearm is not a crime against a person or property because it is not so designated in RCW 9.94A.411, which incorporates a table categorizing crimes for prosecuting standards, including "Crimes Against Persons" and "Crimes Against Property/Other Crimes." (Capitalization omitted). But our Supreme Court rejected that argument in *Snedden*, 149 Wn.2d at 922.

However, in response to a jury question, the trial court erroneously instructed the jury that whether unlawful possession of a firearm was a crime against property was a factual issue for its determination. We hold that the erroneous jury instruction did not relieve the State of its burden to prove the elements of burglary which were properly provided in the court's earlier instructions. Therefore, we apply the non-constitutional harmless error standard. Under that standard, an error requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial. *Gower*, 179 Wn.2d at 854-55.

Under the circumstances of this case, we hold that the trial court's error was not harmless even under the less stringent non-constitutional standard. The trial court's instruction was equivalent to telling the jury that unlawful possession of a firearm was a permissible predicate crime for burglary when it was not. The effect of the instruction was to tell the jury that the crime against property requirement was satisfied by unlawful possession of a firearm, which may have caused the jury to unknowingly disregard the requirement that the predicate crime be a crime against a person or property. The uncontradicted trial testimony was that Kindell entered (and remained) in Crowley's house with the sole purpose of hiding from law enforcement officers.[4] Without considering the unlawful possession of a firearm as the predicate crime, there is a reasonable probability that the jury would not have convicted Kindell of burglary. Accordingly, we hold that the erroneous jury instruction requires reversal.

---

[4] RCW 9A.52.040 allows a jury to infer that a defendant who remains unlawfully in a building may be inferred to have acted with intent commit to a crime against a person or property therein. The corresponding jury instruction is 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 60.05, at 15 (3d ed. 2008). However, the trial court did not give this instruction to the jury.

10

No. 44086-5-II

We reverse Kindell's first degree burglary conviction and remand for a new trial on that charge.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

With regard to Kindell's additional arguments, we hold: (1) the trial court did not violate Kindell's right to a speedy trial; (2) the prosecutor did not engage in misconduct by misstating the law; (3) the prosecutor did engage in misconduct by giving a personal opinion and disparaging defendant and defense counsel, but reversal is not required on the unlawful possession of a firearm conviction because Kindell failed to show that the misconduct was so flagrant and ill intentioned that an instruction could not have cured any prejudice; and (4) the reversal of the burglary conviction and the possibility that the trial court erred in counting a misdemeanor in Kindell's offender score require us to remand for resentencing on the second degree unlawful possession of a firearm conviction.

A.     TIME FOR TRIAL

Kindell argues that his convictions should be dismissed with prejudice because the time for trial rule in CrR 3.3 was violated when the trial court granted the State's motion for a continuance, placing the new trial date outside the time for trial expiration date. Because the State presented good cause for the continuance, the trial court did not err in granting it.

A criminal charge not brought to trial within the time limits of CrR 3.3 must be dismissed with prejudice. *State v. Kenyon*, 167 Wn.2d 130, 136, 216 P.3d 1024 (2009). CrR 3.3(b)-(c) provides that a defendant who is detained in jail must be brought to trial within 60 days of

11

arraignment. The purpose of this rule is to protect the defendant's constitutional right to a speedy trial and to prevent undue and oppressive incarceration before trial. *State v. Kingen*, 39 Wn. App. 124, 127, 692 P.2d 215 (1984). But the constitutional right to a speedy trial does not mandate a trial within 60 days. *State v. Torres*, 111 Wn. App. 323, 330, 44 P.3d 903 (2002).

Certain time periods are excluded from the computation of time, including continuances granted by the trial court. CrR 3.3(e). CrR 3.3(f)(2) states:

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. The motion must be made before the time for trial has expired. The court must state on the record or in writing the reasons for the continuance.

A trial court may grant the State's motion for a continuance when "required in the administration of justice" so long as the continuance does not substantially prejudice the defendant in his defense. *State v. Saunders*, 153 Wn. App. 209, 217, 220 P.3d 1238 (2009) (quoting CrR 3.3(f)(2)). The decision to grant a continuance under CrR 3.3 rests in the sound discretion of the trial court and will not be disturbed unless the trial court grants the continuance for untenable reasons. *State v. Ollivier*, 178 Wn.2d 813, 822-23, 312 P.3d 1 (2013).

Here, Kindell was arraigned on July 3, 2012, and remained in custody. Trial was set for August 20. On August 16, the trial court granted the State's motion for a continuance because the crime lab was still processing evidence from the shotgun. The trial court set trial for August 27, 2012, which was 55[5] days from Kindell's arraignment. On August 22, the State sought another continuance because the prosecutor assigned to the case had a previously scheduled

---

[5] The scheduling order states that 59 days would elapse between arraignment on July 3, 2012, and the new trial date on August 27, 2012. But our calculation shows that period to be only 55 days. This scrivener's error is irrelevant in this case.

vacation on the new trial date, the prosecutor had a relationship with the victim that would make it difficult to transfer the case to another prosecutor, the crime lab was not expected to finish its work on the case by the new trial date, and one of the State's primary witnesses was not available on the new trial date. Over Kindell's objection, the trial court granted the State's motion for a one week continuance. The trial court set trial for September 4, which was 63 days after arraignment, but the court ruled that the period from August 27 to September 4 was an excluded period for purposes of speedy trial.

Kindell argues that the record does not support the trial court's decision to grant the State's continuance past Kindell's speedy trial expiration date. We disagree. The trial court stated on the record that there was good cause for the continuance based on (1) the unavailability of the assigned prosecutor, who had a relationship with the victim making it difficult to transfer the case to another prosecutor, and (2) the unavailability of the State's police witness. Scheduling conflicts such as a preplanned vacation and the unavailability of witnesses constitute valid grounds to continue a trial date under CrR 3.3(f)(2). *See, e.g., State v. Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005) (scheduling conflict is a valid consideration); *State v. Heredia-Juarez*, 119 Wn. App. 150, 154-55, 79 P.3d 987 (2003) (valid continuance granted to accommodate prosecutor's reasonably scheduled vacation); *State v. Grilley*, 67 Wn. App. 795, 799, 840 P.2d 903 (1992) (valid continuance granted to accommodate officers' previously scheduled vacations). Moreover, Kindell did not articulate any prejudice resulting from the brief continuance and there is no evidence that the three day delay prejudiced the presentation of his defense.

Kindell also argues that the trial court failed to make express findings that the continuance was required in the administration of justice and that Kindell would not be prejudiced. But CrR 3.3(f)(2) does not require those express findings. It requires only that the court provide reasons for the continuance, which the trial court did here. CrR 3.3(f)(2).

There was nothing untenable about the trial court's decision to grant the continuance and Kindell showed no prejudice to the presentation of his case. Accordingly, we hold that Kindell's time for trial claim fails.

B.      PROSECUTORIAL MISCONDUCT

Kindell argues that the prosecutor engaged in misconduct by (1) misstating the law regarding first degree burglary and urging jurors to convict on an improper basis, and (2) improperly expressing her personal opinion regarding the integrity of the police force and disparaging defense counsel for hinting at police misconduct. Even though we are remanding for a new trial on the first degree burglary charge, we must address Kindell's prosecutorial misconduct arguments because the first is relevant to the retrial of the first degree burglary conviction and the second is relevant to the second degree unlawful possession of a firearm conviction. We reject Kindell's arguments.

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). In assessing whether a prosecutor's closing argument was improper, we recognize that the prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438,

14

448, 258 P.3d 43 (2011). The prosecutor is permitted to comment on the veracity of a witness as long as he or she does not express a personal opinion or argue facts not in the record. *State v. Smith*, 104 Wn.2d 497, 510-11, 707 P.2d 1306 (1985). Prejudice is not determined in isolation but "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

Where, as here, the defendant failed to object to the challenged portions of the prosecutor's argument, he will be deemed to have waived any error unless the prosecutor's misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). In making this determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761.

1. Misstatements of Law

In closing argument, the prosecutor stated:

Now, I don't have to prove to you what crime he intended to commit. It is difficult to get inside somebody's head and prove beyond a reasonable doubt what their intent was to do, what he wanted, what was in his mind at that moment when he walked up those stairs and into [Crowley's] house.
    That's what you have to decide. I would submit to you that all of the evidence proves that he was willing to commit any crime necessary to complete his action. He wanted a place to hide, and if he needed to assault somebody like he did [ZM], he would do that. If he needed to steal a gun in order to shoot himself or shoot the cops, he would have. If he could have – he intended and meant to do absolutely anything that it would have taken for him to hide from the police, because that was the only thing on his mind at that point.

15

RP at 262. Kindell did not object to the prosecutor's remarks.

Kindell argues that the prosecutor's statement misled the jurors by urging them to convict him of burglary if he entered with the intent to commit any crime" or absolutely anything, rather than crimes against persons or property. We disagree.

The prosecutor did not mislead the jury or seek to diminish the State's burden. The prosecutor discussed the elements of the burglary charge presented in the court's "to convict" jury instruction. After correctly stating that the second element was "that the entering or remaining was with the intent to commit a crime against a person or property therein," the prosecutor briefly explained that the State did not have to prove the particular crime Kindell intended. RP at 262. In the context of the prosecutor's entire argument, this discussion of the intent element was not an improper statement of the law or contrary to the trial court's instructions.

2.    Personal Opinion/Disparaging Defense Counsel

During closing argument, Kindell argued that officers falsified reports and moved evidence. This argument was based on Kindell's testimony that he did not touch or move the shotgun and that he did not make the threats that one of the officers testified to and included in a supplemental report. In rebuttal, the prosecutor stated that the defense's theory about police moving evidence and planting false statements was "ludicrous," accused defense counsel and Kindell of watching too much television, and stated, "[t]hat's not how this police force plays ball." RP at 287. Kindell did not object to the prosecutor's rebuttal statements.

A prosecutor commits misconduct if it is clear and unmistakable that he or she is expressing a personal opinion rather than arguing an inference from the evidence. *State v. Brett*,

16

126 Wn.2d 136, 175, 892 P.2d 29 (1995). We agree that it was improper for the prosecutor to have vouched for the integrity of the police. Her broad statement was not an inference from the record because there was no evidence presented about the quality of the police force's investigations in general. The prosecutor should have limited her rebuttal of Kindell's police misconduct theory to arguing that there was no evidence of police misconduct in this case. It also was improper for the prosecutor to levy her criticism directly at Kindell and defense counsel rather than at their police misconduct theory. *See Thorgerson*, 172 Wn.2d at 451-52.

However, because Kindell did not object to the statements at trial, he must show that the misconduct was so flagrant and ill intentioned that no curative instruction could have eliminated any resulting prejudice. *Emery*, 174 Wn.2d at 760-61. Kindell could have proposed an instruction directing the jury to disregard the prosecutor's personal opinions and criticism of Kindell and defense counsel, and there is no reason to believe that such an instruction would not have eliminated any prejudice. Accordingly, we hold that although the prosecutor's comments were improper, Kindell's failure to object below waived his misconduct claim.

C.   SENTENCING

Kindell argues that the trial court erred in sentencing him by including three misdemeanors in his offender score and failing to prove the comparability of his out-of-state convictions. Although we remand for a new trial on the first degree burglary charge, we must address this issue with regard to the second degree unlawful possession of a firearm charge.

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the sentencing court uses the defendant's prior convictions to determine an offender score which, along with the seriousness level of the current offense, establishes his or her presumptive standard sentencing

17

range. *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999). We review a sentencing court's calculation of an offender score de novo. *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007).

The State must prove the existence of prior convictions[6] used to calculate an offender score by a preponderance of the evidence. *Ford*, 137 Wn.2d at 479-80; *see also* RCW 9.94A.500(1). Generally this is accomplished through a certified copy of the judgment and sentence, unless the defendant affirmatively acknowledges the criminal history on the record. *State v. Mendoza*, 165 Wn.2d 913, 930, 205 P.3d 113 (2009). If the convictions are from another jurisdiction, the State also must prove that the conviction would be a felony under Washington law. *Ford*, 137 Wn.2d at 480. Only if the out-of-state convictions are comparable to a Washington conviction can those convictions be included in the offender score. *See Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007); RCW 9.94A.525(3).

"[T]he court may rely on the defendant's stipulation or acknowledgement of prior convictions to calculate the offender score." *State v. James*, 138 Wn. App. 628, 643, 158 P.3d 102 (2007). A defendant may waive any challenges to incorrect facts, such as by stipulating to the existence of a prior conviction and the comparability of an out-of-state offense. *State v. Cadwallader*, 155 Wn.2d 867, 875, 123 P.3d 456 (2005). But a defendant cannot waive a challenge to a legal conclusion – such as a sentence in excess of that which is statutorily authorized based on a miscalculated offender score. *See Cadwallader*, 155 Wn.2d at 874-75 (defendant could not agree to a life sentence as a persistent offender where judgment and sentence showed that one of the predicate strike offenses washed out); *In re Pers. Restraint of*

---

[6] Generally, only felonies are included in the offender score. *State v. Larkins*, 147 Wn. App. 858, 862-63 & n.7, 199 P.3d 441 (2008).

*Goodwin*, 146 Wn.2d 861, 873-76, 50 P.3d 618 (2002) (express agreement that criminal history was correct did not waive challenge that one of the prior convictions used to calculate offender score had washed out).

Here, the prosecutor, Kindell, and Kindell's counsel signed a "Declaration of Criminal History" at sentencing that listed Kindell's undisputed prior criminal convictions and assigned points to certain prior convictions for purposes of calculating Kindell's offender score. This document was incorporated into the judgment and sentence. Kindell's declaration functions as a stipulation to the existence of the prior convictions listed on the document. And to the extent that the declaration allocated offender points to certain out-of-state convictions, he stipulated that those convictions were comparable to Washington felonies. Kindell's stipulations satisfied the State's burden to prove the existence and comparability of his out-of-state convictions. Therefore, Kindell's claim that the State failed to prove the comparability of his out of state convictions fails.

Kindell also argues that the trial court erred by including three misdemeanors: attempted escape (Colorado), possession of marijuana (Colorado), and third degree malicious mischief (Washington) in Kindell's offender score. We do not consider this argument with regard to the two out-of-state convictions because Kindell stipulated as a factual matter that they were comparable to Washington felonies. Moreover, he provides no authority in support of his allegation that they are not felonies and are not comparable to felonies under Washington law.

Kindell also stipulated that the Washington third degree malicious mischief conviction counted as a point in his offender score. However, his stipulation does not waive his present challenge as to whether the conviction should have been included in his offender score because

that is a legal conclusion under the circumstances presented here. *See Cadwallader*, 155 Wn.2d at 874-75; *Goodwin*, 146 Wn.2d at 873-76. Third degree malicious mischief is not a felony – it is a gross misdemeanor. RCW 9A.48.090. Therefore, it should not have been included as a point in calculating Kindell's offender score. *See State v. Larkins*, 147 Wn. App. 858, 862-63 & n.7, 199 P.3d 441 (2008).

The State appears to concede that Kindell's Washington conviction for third degree malicious mischief should not have been included in his offender score. However, the State argues that despite the one point marked next to third degree malicious mischief on the declaration of criminal history (which is attached and incorporated by reference to the judgment and sentence), it is apparent that the trial court did not use that point in calculating Kindell's offender score as five. The State argues that because Kindell had two current felony offenses, they each counted one point against the other for scoring, and that along with the four points for Colorado offenses, Kindell had an offender score of five for each offense. The trial court used that score to sentence him. Although the State's analysis seems reasonable, there is nothing on the judgment and sentence stating that the current offenses counted as one point in the offender score and the declaration attached appears to count a point from the misdemeanor conviction, which is improper.

Because of the reversal of the burglary conviction and the possibility that the trial court erred in counting a misdemeanor in Kindell's offender score, we remand for resentencing on the second degree unlawful possession of a firearm conviction. On remand, Kindell's Washington conviction for third degree malicious mischief should not be included in his offender score.

No. 44086-5-II

We reverse and remand for a new trial on the first degree burglary conviction, affirm the second degree unlawful possession of a firearm conviction, and remand for sentencing on the unlawful possession of a firearm conviction.

_____<br>MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
LEE, J.